763 So.2d 531 (2000)
ORANGE AVENUE CHARTER SCHOOL, Appellant,
v.
ST. LUCIE COUNTY SCHOOL BOARD, Appellee.
No. 4D99-2662.
District Court of Appeal of Florida, Fourth District.
July 26, 2000.
*532 Margaret A. Benton, Fort Pierce, for appellant.
Daniel B. Harrell of Gonano, Harrell & Ferguson, Fort Pierce, for appellee.
STONE, J.
We affirm the final action of the St. Lucie County School Board which denied renewal of Orange Avenue Charter School's charter.
Orange Avenue was issued an initial school charter pursuant to section 228.056, Florida Statutes, for the 1997-98 school year. The school serves a small population of at risk children in grades kindergarten through four. The charter was renewed for the 1998-99 school year, but in the proceedings under review, renewal was denied for the 1999-2000 school year.
Section 228.056, Florida Statutes, vests the district school boards with the responsibility for receiving and reviewing all charter applications, incident to which it is required to monitor and review the charter school's progress toward its stated goals. At the end of the charter's term, the school board/sponsor has the discretion to choose not to renew the charter for any of the following reasons:
1. Failure to meet the requirements for student performance stated in the charter.
2. Failure to meet generally accepted standards of fiscal management.
3. Violation of law.
4. Other good cause shown. § 228.056(1)(a), Fla. Stat.
The school board initially determined not to renew Orange Avenue's charter in accordance with the recommendation of the superintendent of schools, and Orange Avenue appealed this decision to the state Board of Education. The governor and the cabinet, sitting as the state Board of Education, "rejected" the school board's initial determination not to renew the charter and remanded the matter for further consideration.
Following remand, the school board conducted a full evidentiary public hearing before taking final action as required by section 228.056(3)(c), Florida Statutes. We note that although the school board should have conducted a full informal evidentiary hearing prior to its initial decision, the board had given notice and Orange Avenue had participated in the initial proceedings. Further, the school board offered Orange Avenue the belated option of a full evidentiary hearing prior to consideration by the state Board of Education, and Orange Avenue rejected that option.
The evidence taken at the hearing on remand was extensive and too voluminous to repeat in full here. The essential facts and findings are referenced in the board's decision, in which the board concluded that the evidence supported a finding:
that good cause has been shown to adopt the recommendation of the Superintendent of Schools. This Board finds and determines that the competent substantial evidence of record demonstrates that approving the recommendation of the State Board of Education would be contrary to law and contrary to the best interests of the people and the community, for the following reasons:
(1) A program review undertaken as provided in Section 228.056(9)(b), Florida Statutes, demonstrates that the criteria set forth in Section 228.056(9)(a)1, 2, 3, and 4 have not been successfully accomplished: the Charter School has failed to meet the requirements for student progress and performance that are stated in the charter.

*533 (a) The Charter School failed to undertake the assessments to which it agreed in its charter.
(b) The Charter School has provided no credible alternative evidence of adequate student progress, performance, or achievement. The supplemental reading program diagnostics performed multiple times throughout the school year are not a substitute for demonstrable measurements of learning outcomes. Without any demonstrable measurement of learning outcomes, the Charter School has been unable to show that its program provides adequate learning opportunities for its students.
(c) All available information consistently indicates that Charter School students are not making adequate progress. Standardized test score results are the lowest of any school within the State. Even when compared with other St. Lucie County public schools having similar or higher percentages of students receiving free and reduced lunch (and therefore high percentages of students "at risk"), the Charter School falls unacceptably below the levels of achievement attained in those other schools.
(d) There is no credible evidence that the student performance objectives established by the Charter School for third grade (65 percent of students achieving nine months growth in reading) or fourth grade (70 percent of students achieving nine months growth in reading) have been met. Indeed, the Charter School acknowledged in its Annual Report that these goals were not attained.
(e) Continuation of a program that produces levels of student progress and performance so far below any reasonably acceptable level in turn poses an unreasonably high risk of harm to Charter School students.
(2) The objectives for student progress and performance proposed by the Charter School for future years reveal the persistence of unacceptably low expectations. The Charter School has stated in its Annual Report that by 2003, after four additional years of effort, only five percent of its students will score at or above the median on standardized achievement tests. With such meager performance objectives for its students, the Charter School is projecting continued failure for its academic program. Under the circumstances, prolongation of the Charter School's program through renewal of its charter would cause serious and undue harm to its students.
(3) Volunteer and parental involvement declined substantially from that enjoyed in the first year of operation, which in turn appears to indicate a decline in sustainable community and parental support for the Charter School and its program.
(4) Although an additional grade level was added to the program in the second year of operation, total enrollment remained virtually constant. The kindergarten class size, in particular, declined significantly in the second year, which again appears to indicate a decline in sustainable community and parental support for the Charter School and its program.
(5) The Board of Directors experienced significant problems in maintaining proper governance of the Charter School and its program, including holding meetings without appropriate provision for minutes being taken, holding meetings without notice to the public, inability to obtain a quorum for meetings, and starting meetings late because of lack of a quorum at the scheduled meeting time. Moreover, the Annual Report filed by the *534 Charter School reflects a deficit in operations during the 1998-1999 school year, and the potential that categorical revenues were not properly expended. Again, these problems appear to reflect a decline in sustainable community and parental support for the Charter School and its program.
Section 228.056(4), Florida Statutes, provides that on remand from the state Board of Education,
[T]he district board may fail to act in accordance with the recommendation of the state board only for good cause. Good cause for failing to act in accordance with state board's recommendation arises only if the school board determines by competent substantial evidence that approving the state board's recommendation would be contrary to law or contrary to the best interest of the pupils or the community.

§ 228.056(4)(c), Fla. Stat. (emphasis added). The school board recited several grounds for concluding that renewal of Orange Avenue's charter would be contrary to the best interest of the pupils or the community, and the record reflects competent substantial evidence supporting the school board's decision to override the recommendation of the state board.
The evidence included testimony that while numerous tests were administered, an expert, Dr. Messmore, raised significant doubts as to the appropriateness of the testing that was done; specifically, the excessive reliance on the "Failure Free" reading tests to measure reading proficiency, and whether the test administrators were properly qualified to administer and interpret the basic reading inventory test that was given. Although Orange Avenue did administer some tests, there is substantial evidence to support the school board's conclusion that the school did not undertake the tests it had previously agreed to as a condition for its charter.
Dr. Messmore and Ms. Townsend, school board liaison to the charter school, described a complete lack of adequate progress in student performance based on the tests that were performed. The results of the tests which were given evidenced an overall downturn in third and fourth grade skill, a point recognized by the school on its annual progress report. Moreover, there is evidence that the annual report overstated student performance on at least one test.
The evidence further showed that Orange Avenue Charter School failed in comparison to comparable public schools. While the charter school disputes the validity of drawing comparisons between its students and other "at risk" public school students of St. Lucie County, the school board was entitled to accept or reject the comparison in making its decision as a matter of agency discretion. See Schrimsher v. Sch. Bd. of Palm Beach County, 694 So.2d 856, 861 (Fla. 4th DCA 1997); McDonald v. Dep't of Banking and Fin., 346 So.2d 569 (Fla. 1st DCA 1977).
We also recognize that conflicting testimony regarding student progress was provided by Orange Avenue's experts, Drs. Keith and Hamilton. However, Orange Avenue's challenge to the opinion of the school board witnesses regarding student progress was, again, a factual matter which the school board was free to accept or reject in the face of contrary expert testimony. See Schrimsher; McDonald. As to matters of agency discretion, such as the validity and weight to be given educational testing, we defer to the judgment of the school board. See Dreyer v. Florida Real Estate Comm'n, 370 So.2d 95 (Fla. 4th DCA 1979).
The school board's action is reviewed by this court for the presence of competent substantial evidence supporting its decision. See § 228.056(4)(c), Fla. Stat. In affirming, we find the board's conclusion that continuation of the school with such low levels of progress "poses an unreasonably high risk of harm to Charter School *535 students," to be amply supported by the evidence. The performance of Orange Avenue's students, as described by Dr. Messmore and Ms. Townsend, supports the board's finding that continuation of the charter would be contrary to the best interests of the pupils and, therefore, supplies the good cause necessary to override the state board's recommendation. See id. The record also supports a finding of low performance expectations, declining enrollment, and declining parent volunteerism.
Accordingly, we find no reversible error or abuse of discretion and affirm as to this and all other issues raised.
WARNER, C.J. and GLICKSTEIN, HUGH S., Senior Judge, concur.